UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEE PAYNE,

              **Plaintiff,**         CIVIL ACTION NO. 12-cv-11423

      **vs.**

                            DISTRICT JUDGE PATRICK J. DUGGAN

**COMMISSIONER OF**         MAGISTRATE JUDGE MONA K. MAJZOUB
**SOCIAL SECURITY,**

              **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert Payne seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.)[1] Before the Court is Defendant's Motion for Summary Judgment. (Docket no. 10.) Plaintiff has filed neither a Motion for Summary Judgment nor a Response to Defendant's Motion.[2] The matter has been referred to the undersigned

---

[1] Plaintiff's pro se Complaint was filed on March 29, 2012. (Docket no. 1.) The Complaint does not set forth the grounds under which Plaintiff seeks review of Defendant's decision. Instead, it merely re-asserts the basis under which Plaintiff believes he is entitled to benefits. Nevertheless, for purposes of this Report and Recommendation, the Court will assume that Plaintiff intended to challenge the Defendant's decision under 42 U.S.C. § 405(g).

[2] After Defendant filed his Motion for Summary Judgment, Plaintiff submitted five pages of records from the Social Security Administration and from doctors at Miracle-Ear and Catholic Charities. (*See* docket no. 11.) Plaintiff included some handwritten notes on these documents, but he did not directly respond to any of Defendant's arguments. (*Id.*) On February 15, 2013, Plaintiff filed an Application for Appointment of Counsel. (Docket no. 12.) On April 9, 2013, the Court Denied Plaintiff's application and noted that Plaintiff's case was "not exceptionally complex" and that "[p]laintiffs, even indigent plaintiffs, regularly acquire counsel in Social Security cases . . . [through] contingent fee agreements." (Docket no. 13 at 1-2.) To date, Plaintiff does not appear to have retained counsel in this matter.

for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The Court

has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation

pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.      RECOMMENDATION:**

      This Court recommends that Defendant's Motion for Summary Judgment (docket no. 10)

be GRANTED.

**II.     PROCEDURAL HISTORY:**

      Plaintiff filed an application for Supplemental Social Security Income benefits with a

protective filing date of December 28, 2009, alleging that he had been disabled since August 8,

2007; Plaintiff later amended his alleged onset date to the date of his application, December 28,

2009.[3]  (TR 72, 181-84.)  The Social Security Administration denied benefits.  (*See* TR 104, 110-

16.)   Plaintiff requested a *de novo* hearing, which was held on August 18, 2011, before

Administrative Law Judge (ALJ) Regina Sobrino, who subsequently found that Plaintiff was not

entitled to benefits because he was capable of performing a significant number of jobs in the national

economy.  (TR 7-22.)  The Appeals Council declined to review the ALJ's decision (TR 1), and

Plaintiff commenced the instant action for judicial review.  Defendant now files his Motion for

Summary Judgment.

**III.    PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL
         EXPERT TESTIMONY**

      **A.      Plaintiff's Testimony**

      Plaintiff was 52 years old at the time of the administrative hearing and 51 years old at the

_____

      [3]Plaintiff had an earlier application for benefits denied by the ALJ on December 14,
2009, but at the hearing in this matter, Plaintiff's attorney alleged that Plaintiff's condition had
deteriorated since the time of the prior denial.  (*See* TR 14.)

time of alleged onset.  (*See* TR 74.)  Plaintiff has a GED and has not worked since December 2009.

Plaintiff testified that he has been unable to work because of physical and mental impairments.  (TR

74.)  Plaintiff testified that he did not cook, clean, do laundry, shop for groceries, or spend any time

visiting relatives or friends.  (TR 76-77.)  He indicated that he had no hobbies and he had trouble

bathing and dressing himself.  Plaintiff testified that he did not do any yard work, and he did not

drive.  (TR 77.)

Plaintiff testified that he had problems with his back and legs and that he could stand for

about five minutes and sit for 10 to 15 minutes.  (TR 74-75.)  He told the ALJ that he had been

walking with a cane for approximately 10 years but that the cane had not been prescribed by a

doctor.  (TR 75.)  Plaintiff further testified that he had cramps, "like arthritis," in both hands, that

he could only lift about five pounds, and that he had trouble reaching because of muscle spasms in

his shoulders and arms.  (TR 75-76.)  Plaintiff additionally indicated that he had trouble bending at

the waist because of his back and that he could not bend his knees or crouch down.  Plaintiff stated

that his physical impairments also precluded him from climbing stairs.  (TR 76.)

In addition to his physical impairments, Plaintiff testified that he did not get along well with

other people "I think because I got a mental problem."  (TR 80.)  Plaintiff indicated that he "don't

feel normal like a normal person;" instead, he felt "depressed and anxious," he had a difficult time

sleeping, he had migraine headaches, and he heard voices calling his name all the time.  (TR 80-81.)

He indicated that he had headaches two or three times a day and that he had to lay down to get rid

of them.  (TR 81.)  He also testified that he could not concentrate on what people were saying, so

he didn't understand instructions.  (TR 79-80.)

Plaintiff testified that he saw various doctors at Michigan Health Specialists ("MHS")

regarding his physical pain, and he treated with Dr. Ballard, a psychiatrist, and Ms. Eve, a therapist,

at Catholic Charities for his mental impairments.  (TR 79, 82.)  He had been treating with Dr. Ballard twice a month for approximately three years.  (TR 81-82.)

Plaintiff testified that to alleviate his symptons, he took Invega, Alprazolam, Gabapentin, Alpros, Tramadol, Tylenol with codeine, Loratadine, Vutalvine, and Methocarbamol.  (*See* TR 78.) Plaintiff indicated that these medications were prescribed by Dr. Ballard and the various doctors at MHS.  (TR 78-79.)  He stated that the medications caused no side effects (TR 79) and that they "completely help[ed his] symptoms."  (TR 80; *see also* TR 81.)

### B.     Medical Record

Plaintiff's request for benefits relies on the allegation that his condition has deteriorated since December 28, 2009, the date of his application.  The ALJ and Defendant have adequately set forth the medical evidence in this case, and Plaintiff does not allege otherwise.  Therefore, the Court hereby incorporates by reference the medical record as set forth in the ALJ's opinion and in Defendant's brief in support of his Motion.  (TR 12-18; Docket no. 10 at 6-10.)  The Court has reviewed Plaintiff's medical records and will incorporate citations as necessary throughout this Report and Recommendation.

The Court acknowledges Plaintiff's Complaint, which alleges "bad eye sight," "surgery on [Plaintiff's] nose," "muscle spasms," "bad feet," "migraine headaches," "surgery on [Plaintiff's] arm," "pulling" of Plaintiff's left eye and mouth, and various psychological issues.  (Docket no. 1 at 2-3.)  To the extent that these matters are included in Plaintiff's medical record, the ALJ and Defendant have sufficiently addressed them.

The Court also acknowledges the documents that Plaintiff submitted in apparent response to Defendant's Motion.  (Docket no. 11.)  The first three pages of this submission appear to be a letter from the Social Security Administration informing Plaintiff that the current matter is being

4

reviewed and that the office acknowledges that "payments was (sic) stopped in error in 05/2006 due

to an outstanding warrant."  (*Id.* at 1-3.)  These pages have no bearing on the matter before the

Court, but the final two pages of Plaintiff's submission are (1) a hearing test performed on either

July 6 or October 12, 2011,[4] and (2) a note from Dr. Ballard dated November 17, 2011, stating that

Plaintiff is "[u]nable to work for lifetime" due to "schizophrenia."  (*Id.* at 4-5.)  The Court, however,

will not consider this evidence.[5]

### C.    The Vocational Expert

The ALJ asked the VE to consider a hypothetical person of Plaintiff's age and education who

---

[4]The original "Date of Test" on the form is July 6, 2011, but this date is crossed out, and
October 12, 2011, is written above.  (Docket no. 11 at 4.)

[5]In cases where, as here, the Appeals Council declines to review the ALJ's decision,
judicial review is limited to the evidence that was part of the record before the ALJ.  *Cotton v.
Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Secretary*, 987 F.2d 1230, 1233 (6th Cir. 1993);
*Wyatt v. Sec'y*, 974 F.2d 680, 685 (6th Cir. 1993).  Further, under 20 C.F.R. § 404.970(b), "[i]f
new and material evidence is submitted, the Appeals Council shall consider the additional
evidence only where it relates to the period on or before the date of the administrative law judge
hearing decision."  The "court is confined to review evidence that was available to the Secretary,
and to determine whether the decision of the Secretary is supported by substantial evidence."
*Wyatt*, 974 F.2d at 685 (*citing Richardson*, 402 U.S. at 401).  The court may still remand the case
to the ALJ to consider this additional evidence on a showing of "good cause," 42 U.S.C. §
405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001), but a plaintiff must demonstrate that
there was a reasonable probability that the Secretary would have reached a different disposition
of the disability claim if presented with the new evidence."  *Sizemore*, 865 F.2d at 711 (*citing
Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d
692, (6th Cir. 1993).
    Regarding the hearing test included with Plaintiff's submission, the Court first notes that
there is no indication in the document that Plaintiff was the subject of this test.  Additionally,
other than handwritten notes in the margin of the test indicating "severe loss both ears," there are
no physician's notes analyzing the test itself.  Plaintiff has not demonstrated (or alleged) that the
Secretary would have reached a different conclusion if presented with this evidence.
Additionally, with regard to Dr. Ballard's note, it is well settled that the ultimate issue of
disability is reserved to the Commissioner and not the treating or examining physician.  *Kidd v.
Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008).  Therefore, the ALJ need not have considered
this evidence even if it were presented at Plaintiff's hearing.

has no past relevant work.  The ALJ told the VE to assume that this individual was limited to performing no more than medium work and that the person "should be able to use both hands."  The ALJ explained that the individual "shouldn't have to use just one arm or hand to do the [medium-level] lifting, carrying, pushing or pulling."  (TR 83.)  The ALJ further asked the VE to assume that this person could not climb ladders, could not do tight or forceful gripping with the left (non-dominant) hand, and was limited to frequent handling, fingering, and reaching with the non-dominant hand and upper extremity.  (TR 83-84.)  The ALJ asked the VE to assume that this individual could occasionally climb stairs, stoop, and crouch, should not be exposed to hazards, and should not need to drive as a work duty.  (TR 84.)  Additionally, the ALJ asked the VE to assume that such an individual would be "limited to simple, routine, repetitive work consisting of one a two-step tasks;" that "[w]ork should be low stress[, t]hat is, it should not be fast-paced, [and] should not involve quotas[; that t]here should be no assembly line work[; and] the work should not require more than occasional and superficial contact with the public, coworkers or supervisors."  (TR 84.)

The VE testified that there would be jobs available in the medium category as, for example, a food prep worker, a janitor, or a packager, totaling approximately 45,200 jobs in the region.  (TR 84.)  The VE further testified that there would be similar jobs as, for example, a food prep worker, an inspector, or a packer, in the light category, totaling approximately 20,800 jobs in the region.  (TR 84-85.)  The VE indicated that a person would be required to work eight hours a day, five days a week, to maintain these jobs, but the person could miss work one day a month and be off tasks approximately 20% of the time and still maintain employment.  (TR 85.)

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since December 28, 2009; and suffered from severe myositis/history of left arm injury, mood disorder,

6

organic mental disorder, and schizophrenia; he did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 12-13.) The ALJ found that Plaintiff's allegations regarding the extent of his symptoms were not wholly credible. (TR 15.) After considering the record, the ALJ found that Plaintiff retained the residual function to perform medium work except that Plaintiff could not climb ladders; could occasionally climb stairs, stoop, and crouch; could frequently handle, finger, and reach with the left upper extremity; should be able to use both hands to lift, carry, push, and pull; could not perform tight or forceful gripping with his left hand; must avoid exposure to hazards; could not drive as a work duty; was limited to simple, routine, repetitive work consisting of one- and two-step tasks; and was limited to low stress work that does not involve interaction with the public or more than occasional and superficial contact with coworkers and supervisors. (TR 15.) The ALJ also explained that by "low-stress work," she meant "no fast-paced work, no work that involves quotas, and no assembly line work." (TR 15.) Thus, the ALJ found that Plaintiff could perform a substantial number of jobs that exist in the national economy. (TR 18-19.) Therefore, he was not disabled under the Social Security Act at any time from December 28, 2009, through the date of the ALJ's decision. (TR 19.)

## V.      LAW AND ANALYSIS

### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

7

*Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

*Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts

in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human*

*Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the

administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by

substantial evidence, it must be affirmed, even if the reviewing court would decide the matter

differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial

evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir.

1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial

evidence standard "presupposes that there is a zone of choice within which the decisionmakers can

go either way, without interference by the courts").

### B.        Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step

sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)        Plaintiff was not presently engaged in substantial gainful employment; and

(2)        Plaintiff suffered from a severe impairment; and

(3)        the impairment met or was medically equal to a "listed impairment;" or

(4)        Plaintiff did not have the residual functional capacity (RFC) to perform relevant past
           work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work,

the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work

experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).  As noted, Plaintiff has not filed a Motion in this matter.  Defendant argues that the ALJ's decision is supported by substantial evidence.  (*See* docket no. 10.)  The Court will assume that Plaintiff is not challenging the ALJ's

determination at Steps 1 or 2 because these findings were in Plaintiff's favor. Additionally, Plaintiff has presented no evidence to suggest that the ALJ's Step-3 determination was inappropriate. Therefore, the Court will confine its analysis to a review of the ALJ's Step 4 and Step 5 determinations.

### 1.     The ALJ's Step-4 Finding; Plaintiff's RFC

The ALJ began her discussion of Plaintiff's RFC by acknowledging Plaintiff's reported symptoms as set out through his testimony at the August 11, 2011 hearing; the ALJ's account closely resembles the Court's recitation of the same hearing as set forth herein. (*See* TR 15.) The ALJ then discounted Plaintiff's statements concerning his symptoms as not fully credible because "they are not consistent with the objective medical and other evidence of record." (TR 15.)

In support of her conclusion, the ALJ first considered Plaintiff's complaints of left-arm myositis. (TR 15.) The ALJ noted that while Plaintiff had been complaining of pain related to an accident seven to eight years earlier, Plaintiff would not consider "any treatment options other than [pain killers]," and he showed "no limitation of motion and no pain with passive movement." (TR 15.) Plaintiff's doctors originally opined that he had musculoskeletal pain and later diagnosed him with myositis. (TR 15.)

The ALJ then considered a report from consultative-examiner Neil Friedman, a Board-certified physiatrist, who noted that Plainitiff had full range of motion in his lower extremities, that he ambulated without an assistive device with normal gait (even though Plaintiff claimed to have used a cane for 10 years), and that "[h]e was able to walk on his heels and toes, squat, and arise from a deep knee bend without difficulty." (TR 16.) Plaintiff also had "no difficulty arising from a chair, or getting on and off the examining table." (TR 16.)

The ALJ also considered Plaintiff's mental limitations by first looking at Dr. Ballard's

10

records.  Dr. Ballard consistently diagnosed Plaintiff with schizophrenia, and his notes reflected a "history of paranoid delusions, and of auditory and visual hallucinations."  (TR 16.)  Plaintiff was prescribed Invega and Xanax, and his own testimony indicates that his medications were effective. (*See* TR 16.)  The ALJ also considered Plaintiff's Global Assessment Functioning ("GAF") scores, which ranged from 40 to 75 throughout the period in question.  (*See* TR 16.)  The ALJ then reviewed the records of consultative psychologist Matthew Dickson, who echoed Dr. Ballard's findings of schizophrenia and auditory hallucinations.  (TR 16.)  Dr. Dickson diagnosed Plaintiff with a mood disorder, not otherwise specified.  (TR 16.)

After reviewing Plaintiff's medial records, the ALJ considered medical opinions submitted by Dr. Friedman, Dr. B.D. Choi (a state medical consultant), Dr. Dickson, Dr. David Harley, (a state psychological consultant), and "a social worker."  (TR 17-18.)  With regard to Plaintiff's physical limitations, Dr. Friedman noted that Plaintiff could work "without restriction," but Dr. Choi opined that Plaintiff should be limited to medium work.  The ALJ gave significant weight to Dr. Choi's opinion as it was supported by Plaintiff's treatment history.  (TR 17.)  With regard to Plaintiff's ability to carry out and remember instructions, the ALJ noted that the opinions of Drs. Dickson and Harley were consistent: Plaintiff was moderately limited in this area.  (TR 17.)  And finally, with regard to Plaintiff's other mental conditions, the ALJ gave significant weight to the state-psychologist's opinion because the "social worker" was not an "acceptable medical source." (TR 17.)

An ALJ "may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree so long as the ALJ properly sets forth the basis for determining Plaintiff's credibility. SSR 96–7p.  Here, the ALJ found that Plaintiff's statements were not credible, and the Court can find no fault in the ALJ's analysis of Plaintiff's

subjective complaints.[6]  Moreover, the ALJ appears to have properly weighed the medical and opinion evidence of record.  The Court has found no evidence to conflict with the ALJ's RFC finding, let alone any reason to suggest that the ALJ's finding is not supported by substantial evidence.

### 2.      The ALJ's Step-5 Finding

In making his Step-5 finding, the ALJ relied on the testimony of the VE.  In a hypothetical question posed to the VE, an ALJ is required only to incorporate those limitations that he finds credible and supported by the record.  *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  Here, the ALJ presented all of the limitations of the RFC in his hypothetical questions to the VE, and the VE testified that there are jobs available for a person with these limitations.  (TR 83-85.)  Plaintiff's attorney questioned the VE as well.  (TR 85.)

The ALJ then applied the VE's testimony in determining whether there were a significant number of jobs available in the economy that Plaintiff could perform.  The VE testified without qualification that Plaintiff could perform at least 66,000 jobs that were available in the region.  (TR 83-85.)  Although there is no "magic number" that constitutes a significant number of jobs, the Court finds that the ALJ's decision here is adequately supported.  *See Hall v. Bowen, 837 F.2d 272, 274-75* (6th Cir. 1988) (finding that 1,350 to 1,800 jobs is a significant number of jobs available). There is no challenge to the reliability of the VE's testimony or any other reason to discount the ALJ's reliance on the VE's testimony regarding the number of available jobs.  The ALJ's findings at step five are supported by substantial evidence.

----

[6]As Plaintiff has not raised concerns over the ALJ's credibility determination, the Court will not conduct a full analysis of the same.  Nevertheless, the Court notes that the ALJ appears to have conducted a proper credibility analysis under 20 C.F.R. § 416.929(c)(2).

## VI.      CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment (docket no. 10) should be GRANTED.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.   *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).   Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.   The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.   The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 20, 2013               s/ Mona K. Majzoub                              
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 20, 2013                    s/ Lisa C. Bartlett
                                        Case Manager

14